UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM D. VOGHT,                                    18-CV-1435-MJR

                    Plaintiff,                       DECISION AND ORDER

         -v-

ANDREW SAUL,
Commissioner of Social Security,[1]

                    Defendant.

_____

     Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case. (Dkt. No. 33)

     Plaintiff William Voght ("Voght") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner") denying him Disability Insurance Benefits ("DIB") under the

Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons,

Voght's motion (Dkt. No. 25) is denied and the Commissioner's motion (Dkt. No. 31) is

granted.

## BACKGROUND[2]

     Voght filed an application for DIB on November 17, 2014, alleging disability since

August 1, 2005 due to, *inter alia*, post-polio syndrome as a result of polio diagnosed at

birth, left leg injury, left leg nerve damage, and partial paralysis in left leg. (*See* Tr. 87-

---

[1]  Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party
pursuant to Fed. R. Civ. P. 25(d).
[2]  The Court assumes the parties' familiarity with the facts in this case.

93, 114)[3] Voght's disability benefits application was initially denied on April 15, 2015. (Tr. 27-30) Voght timely filed a written request for a hearing on April 17, 2015. (Tr. 38-39) A hearing was held before Administrative Law Judge Sharon Seeley ("the ALJ") on May 1, 2017. (Tr. 529-66) Voght, who was represented by counsel, testified at the hearing. (*Id.*) The ALJ also received testimony from Vocational Expert Lanell Hall ("the VE"). (*Id.*) On October 2, 2017, the ALJ issued a decision finding that Voght's condition did not meet the standard for disability, as defined by the Act. (Tr. 14-21) The Appeals Council denied plaintiff's request for review of the ALJ's determination on October 12, 2018, and this action followed. (Tr. 5-7)

Born on August 9, 1953, Voght was fifty-one years old on the alleged disability onset date. (Tr. 87) He has an associate's degree in business administration and past relevant work as a laser scanner operator. (Tr. 20, 537)

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[3] References to "Tr." are to the administrative record in this case.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity."  *Id.* §404.1520(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience."  *Id.*  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment."  *Id.* §404.1520(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.*  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations.  *Id.*  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first,

4

whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §404.1520(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §404.1520(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §404.1520(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.*  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §404.1520(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.*  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ first found that Voght last met the insured status requirements of the Act on December 31, 2005.  (Tr. 16)  The ALJ then followed the required five-step analysis for evaluating Voght's claim.  Under step one, the ALJ found that Voght did not engage in substantial gainful activity between the alleged onset date of August 1, 2005 and December 31, 2005, the date last insured.  (*Id.*)  At step two, the ALJ found that Voght had the severe impairment of post-polio syndrome and fused left subtalar joint.  (*Id.*)  At step three, the ALJ determined that, through the date last insured, Voght did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 17)  Before proceeding to step four, the ALJ assessed Voght's RFC, through the date last insured, as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that the claimant: could lift and carry ten pounds occasionally, lighter items frequently, and twelve pounds rarely (defined as 1-5% of an eight-hour workday); could stand and/or walk a total of four hours in an eight-hour workday and sit a total of four hours in an eight-hour workday, but must have been able to alternate between sitting and standing/walking and been able to walk around for five minutes at will; and could occasionally stoop, rarely kneel, crouch, crawl or climb ramps or stairs, and never climb ladders, ropes or scaffolds.

(Tr. 17-20)  Proceeding to step four, the ALJ found that through the date last insured, Voght was capable of performing his past relevant work as a laser scanner operator.[4]

---

[4] The VE testified that the position of laser scanner operator could be categorized as computer-controlled color photograph printer operator, according to the Dictionary of Occupational Titles No. 976.380-010.

(Tr. 20)  Accordingly, without proceeding to step five, the ALJ concluded that Voght was not under a disability, as defined by the Act, at any time from August 1, 2005, the alleged onset date, through December 31, 2005, the date last insured.  (Tr. 20-21)  Consequently, the only issue before the Court is whether there is substantial evidence to support the ALJ's finding that Voght is not entitled to DIB for the five-month period of August 1, 2005 through December 31, 2005.

IV.    _Voght's Challenges_

Voght argues that the ALJ erred by failing to properly consider the opinion of Dr. Allyn Norman, his treating physician.  (_See_ Dkt. No. 25-1 (Voght's Memo. of Law))  For the following reasons, the Court disagrees.

On April 6, 2017, Dr. Norman, Voght's primary care physician, rendered an opinion regarding Voght's functional capacity.  (Dkt. No. 522-26)  Specifically, Dr. Norman opined that Voght could walk one-half of a block without rest or severe pain; could sit for 20 minutes at a time; could stand for 10 minutes at a time; could stand and/or walk less than a total of two hours over the course of an eight-hour work-day; needed to walk around for five minutes every 30 minutes; and needed a cane when engaging in occasional standing and walking.  (Tr. 19, 523-24)  Dr. Norman found that Voght could frequently lift and carry less than 10 pounds; could occasionally lift and carry 10 pounds; and could never lift more than 10 pounds.  (_Id._)  Dr. Norman also found that Voght had head and neck limitations as well as postural limitations.  (_Id._)  Even though the opinion was rendered in April of 2017, Dr. Norman noted that these limitations existed throughout Voght's "lifetime".  (Tr. 525)  The ALJ gave only "partial" or "limited" weight to Dr. Norman's 2017 opinion as it applied to Voght's limitations between August 1, 2005 and December 31, 2005, because

it was inconsistent with other substantial evidence in the record from that time period. (Tr. 18-19)

The Commissioner's regulations as well as Second Circuit precedent "mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). To that end, the "treating physician rule" requires that "the opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the other substantial evidence in the record'." *Id.*; *quoting Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Where an ALJ decides not to credit the opinion of a treating physician, the following factors should be considered: "(1) the frequency, length, nature, and extent of the treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96; *quoting Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). Failure to explicitly consider these factors before declining to give controlling weight to a treating physician's opinion is procedural error. *Estrella*, 925 F.3d at 96. Where an ALJ commits this procedural error and fails to give good reasons for the weight assigned to a treating physician's opinion, remand is warranted. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). "If, however, a searching review of the record assures [the Court] that the substance of the treating physician rule was not traversed, [the Court] will affirm." *Estrella*, 925 F.3d at 96 (internal citations and quotations omitted).

Here, the ALJ complied with the treating physician rule and gave good reasons for affording only partial or little weight to Dr. Norman's opinion.  While acknowledging that Dr. Norman is Voght's "long-time primary care physician", the ALJ found that Dr. Norman's assessment of Voght's "lifetime" limitations was not supported by either the medical evidence in the record or Voght's testimony regarding his capabilities as of the date last insured.  (Tr. 18)  *See* 20 C.F.R. §404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent [an] opinion is with the record as a whole, the more weight we will give to that opinion.");  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (summary order) (upholding the ALJ's decision to reject treating physician's opinion where the opinion was contrary to the physician's own treatment notes).  Indeed, Dr. Norman's opinion is inconsistent with his own treatment notes and other medical evidence, all of which reflect that, during the relevant time period and for a number of years thereafter, Voght had minor medical problems and received minimal medical treatment.  Voght saw Dr. Norman for a general physical exam on August 4, 2005, a few days after the alleged onset date.  (Tr. 377-78)  While the examination showed atrophy and weakness of the left leg due to post-polio syndrome, there were no deformities, masses or swelling.  (Tr. 18, 377-78)  Voght's range of motion was full, smooth and systemic.  (*Id.*)  There is no evidence of medical treatment until one year later, on August 3, 2006, when Voght saw Dr. Norman again for a general physical exam.  (Tr. 18, 384-85)  Voght reported that he felt well with no new problems, and his medical history and the results of his examination were the same as the prior year.  (*Id.*)  In March of 2007, Voght saw Dr. Michael Parentis for fluid in his left elbow and painful calluses on toes caused by post-polio syndrome and corrective foot surgery as a child.  (Tr. 18, 389)  Dr.

Parentis found the elbow to be benign with no further treatment needed, and recommended toe caps and spreaders.  (*Id.*)   A routine exam by Dr. Norman in August of 2007 revealed the same findings as noted in 2005 and 2006.  (Tr. 392-93)

Furthermore, the ALJ provided a number of specific examples as to how Dr. Norman's opinion regarding Voght's "lifetime limitations" was inconsistent with Voght's own testimony regarding his work history and activities as of the date last insured. *See Williams v. Colvin*, 14-CV-947, 2017 WL 3404759, at *6 (WDNY Aug. 7, 2017) ("[A]n ALJ may consider Plaintiff's daily activities, symptoms, and objective medical evidence to determine whether a treating physician is credible.")  For example, Voght's testimony that he spent about one-half of each eight-hour day on his feet while working as a laser scanner operator for over sixteen years was inconsistent with Dr. Norman's finding that, throughout Voght's lifetime, he has been limited to standing or walking for a maximum of two hours over an eight-hour workday.  (Tr. 19, 541, 544)  Dr. Norman opined that Voght must use a cane when standing or walking.  (Tr. 523-24)  While Voght testified during the May 1, 2017 hearing that he now sometimes relies on a cane, he further testified that he did not use a cane in 2005. (Tr. 554-55)  As to the remaining limitations found by Dr. Norman, the ALJ correctly noted that there is no evidence that Voght ever received treatment for head or neck problems, nor is there evidence of any impairments other than those involving Voght's lower left extremity.  (Tr. 19)  For these reasons, the Court finds that the ALJ did not err in her application of the treating physician rule.

Voght also argues that the ALJ erred by relying on her own lay interpretation of bare medical findings in assessing the RFC, and by not further developing the record

after rejecting Dr. Norman's medical source statement.   (*See* Dkt. No. 25-1 (Voght's Memo. of Law))   The Court disagrees.

When the medical evidence shows only minor impairments, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *See Perkins v. Berryhill*, 17-CV-6327, 2018 WL 3372964, at *4 (WDNY July 11, 2018) (internal citations omitted).   Further, remand is not required simply because an ALJ fails to request a medical opinion, *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order), particularly when the record does not indicate that the claimant's impairments severely limit his ability to perform light work. *O'Neil v. Colvin*, 13-CV-575, 2014 WL 5500662, at *7 (WDNY Oct. 29, 2014).   Such is the case here.   First, Voght's own testimony regarding his activities and work history strongly indicates that he did not suffer from disabling conditions during the relevant time period.   Voght testified that, both in 2005 and at the time of the hearing, he was able to work out at the gym, use a treadmill, ride a stationary bike, row, and lift weights.   (Tr. 19, 550-51)   Voght also admitted that he did not "suddenly" become aware of other weakness or changes in his condition in 2005.   (Tr. 19)   Further, Voght testified that he did not stop working as a laser scanner operator because of his impairments, but instead due to changes in technology which rendered the position obsolete.   (Tr. 18-19, 544, 547)   He then started a business with two other individuals, which he also did not leave due to physical impairments.[5]   (*Id.*)   Significantly, Voght testified that he looked for work for three or four months in 2005 after leaving that business.   (Tr. 19, 538, 549)   Also, at the May 1, 2017 hearing, Voght testified that he remains capable of performing his past work as a

---

[5] Voght testified that he was fired from the business in 2005 because his partners did not want to share in the profits.   (Tr. 19, 547-49)

laser scanner operator.  (Tr. 18, 559-61)  The ALJ's finding that Voght was able to lift and carry ten pounds occasionally and lighter items frequently; stand/or walk for four hours in an eight-hour work day, and sit for four hours in an eight-hour workday, is consistent with Voght's testimony that he was capable of these activities during the relevant time period, and that he remained able to perform these functions at the time of the May 1, 2017 hearing.  (Tr. 17-20)  Indeed, the RFC's sitting and standing requirements do not conflict with Voght's testimony that while working as a laser scanner operator, he spent approximately one-half of his workday standing up and one-half of his workday sitting down.  (Tr. 54-41, 544)  The RFC's lifting restrictions and its accommodation for frequent change of positions is also consistent with Voght's testimony that, in his prior job, he could sit down whenever he wanted to; take breaks and walk around for a few minutes if needed; and that he would infrequently lift boxes of film weighing ten to twelve pounds. (Tr. 563)  For these reasons, the Court finds that the RFC is supported by substantial evidence.

Lastly, Voght argues that remand is necessary because the Appeals Council failed to properly consider a December 2017 medical source statement from Dr. Norman.  (*See* Dkt. No. 25-1 (Voght's Memo. of Law))  For the reasons stated below, the Court finds that this alleged failure does not require remand.

To begin, Dr. Norman's second opinion was reviewed by the Appeals Council, albeit after their initial denial of Voght's request for review of the ALJ's determination.  On December 28, 2017, two and a half months after the ALJ rendered her decision in this matter, Dr. Norman provided another treating medical source statement.  (Supp. Tr. 568-

72)[6]  While the statement was submitted to the Appeals Council on April 26, 2018, it was

not considered by the Appeals Council before they denied Voght's appeal on October 12,

2018.  (See Dkt. Nos. 25-3, 24-4, 25-5)  However, in a letter dated September 29, 2019,

the Appeals Council informed Voght that they had received the December 28, 2017

medical source statement by Dr. Norman, that they had since reviewed the statement,

and that no change in their prior determination was warranted.  (Id.)  The Appeals Council

further noted that Dr. Norman's December 28, 2017 medical source statement was very

similar to the prior opinion completed by Dr. Norman on April 6, 2017.  (Id.)

Second, the Court finds that any failure by the Appeals Council to review Dr.

Norman's December 28, 2017 medical source statement prior to deciding Voght's appeal

was harmless error, since the opinion was neither probative nor material.  To obtain

review of additional evidence, the claimant must establish that "the proffered evidence is

(1) new and not merely cumulative of what is already in the record, and that it is (2)

material, that is, both relevant to the claimant's condition during the time period for which

benefits were denied and probative."  Camarata v. Colvin, 6:14-CV-00578, 2015 WL

4598811, at *3 (NDNY July 29, 2015); accord Lisa v. Sec'y of Health & Human Servs.,

940 F.2d 40, 43 (2d Cir. 1991).  Evidence is material if there is a "reasonable probability

that the new evidence would have influenced the [Commissioner] to decide claimant's

application differently."  Id.  Here, consideration of Dr. Norman's December 28, 2017

medical source statement would not have caused the Commissioner to decide this case

differently.  Dr. Norman's second opinion was exactly the same as his first opinion, except

that he opined that Voght could never stoop, crouch/squat, or climb stairs.  (Compare Tr.

---

[6] The Supplemental Transcript continues the numbering of the originally filed transcript.

523-25 *with* Supp. Tr. 569-71)  The reasoning applied by the ALJ in giving little or partial weight to Dr. Norman's first opinion applies with equal force to Dr. Norman's second opinion.    Indeed, Dr. Norman's second opinion remains inconsistent with: (1) his treatment notes from 2005, 2006 and 2007 (Tr. 378, 385, 388, 392-93); (2) Voght's testimony that he was capable of performing his prior job of laser scanner operator (Tr. 559-60); and (3) Voght's testimony that he did not use a cane when he worked in 2005 (Tr. 545-46)  Thus, the Court finds no basis to conclude that timely consideration of Dr. Norman's second opinion would have changed the Appeals Council's determination. *See Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014) (new evidence submitted to Appeals Council "did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case."); *Suttles v. Colvin*, 654 F. App'x 44, 47 (2d Cir. 2016) (finding that new records would not have altered the decision because the new evidence was not materially different from that which was already before the ALJ).

Lastly, this Court has considered the entirety of the record, including the additional evidence submitted to the Appeals Council.  *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record to be considered on judicial review). The Court concludes that the December 28, 2017 medical source statement by Dr. Norman does not undermine the ALJ's determination, which continues to be supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Voght's motion for judgment on the pleadings (Dkt. No. 25) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 31) is granted.  The Clerk of Court shall take all steps necessary to close this case.


**SO ORDERED.**


Dated:        June 18, 2020
              Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge

15